IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02453-RBJ

ROCK & RAIL LLC, a Colorado limited liability company,

    Plaintiff,

v.

MOTHERLOVE HERBAL COMPANY, a Colorado corporation,
INDIANHEAD WEST HOMEOWNERS ASSOCIATION, INC., a Colorado nonprofit corporation,
ROCKIN S RANCH LLC, a Colorado limited liability company,
JOHN CUMMINGS, an individual,
DAVID KISKER, an individual,
GARY OPLINGER, an individual,
WOLFGANG DIRKS, an individual, and
JAMES PIRAINO, an individual,

    Defendants.

## RESPONSE TO MOTION TO AMEND SCHEDULING ORDER TO PERMIT DEFENDANTS TO REBUT PLAINTIFF'S UNTIMELY EXPERT DISCLOSURE

Plaintiff Rock & Rail LLC ("**Rock & Rail**"), by and through its undersigned counsel, submits this Response to Defendants' Motion to Amend Scheduling Order to Permit Defendants to Rebut Plaintiff's Untimely Expert Disclosure:

### INTRODUCTION

1.    Defendants' Motion is an untimely request to disclose expert testimony long after the deadline for doing so has passed and discovery has closed. Defendants claim that they should be entitled to offer expert testimony of Dr. Wilfred Srubar at trial to rebut testimony offered by Rock & Rail's representative, David Hagerman, relating to the processes associated with the making of concrete. The testimony that Defendants claim they are rebutting was testimony

explored by the Defendants in their deposition of Mr. Hagerman as far back as December 11, 2019. Indeed, Mr. Hagerman's affidavit simply addresses issues raised by Defendants at his deposition.

2. At best, the request to make this late disclosure comes months after Defendants claim the need for it became apparent. Defendants did not ask the Court for leave then, in April 2020, to disclose a new expert witness. Instead, Defendants simply proceeded to retain Dr. Srubar and disclose his testimony, never even mentioning it to opposing counsel, much less seeking leave. The disclosure should not be allowed.

3. The Motion should be denied, but if Defendants are allowed to disclose expert testimony at this late date, fairness dictates allowing Rock & Rail to address this issue in full, in the form of its own disclosure of an expert witness on the same issue. Given Defendants' late disclosure, this could necessitate a further delay in the trial.

**ARGUMENT**

4. Rock & Rail agrees with Defendants' recitation of the various deadlines and amendments to the Scheduling Order that have occurred. [Motion, ¶¶4-7]. However, it should be noted that Defendants, in the context of Mr. Hagerman's deposition (as a Fed.R.Civ.P. 30(b)(6) designee for Rock & Rail) on December 11, 2019, addressed the issues that Mr. Hagerman elaborated on in the Hagerman Affidavit.

5. In particular, Defendants' counsel asked Mr. Hagerman questions aimed at Defendants' contention that concrete is immediately created or "manufactured" in the batching equipment at the Highway 34 facility (the "**Facility**"). [*See, e.g.,* Deposition Excerpts of David Hagerman attached as Exhibit A-12 to Defendants' Motion for Partial Summary Judgment, ECF No. 80-13, numbered pages 176-178]. This questioning addressed the fact that a chemical reaction

occurs in the mixing trucks and at job sites, and that complete mixing is required or proper concrete will not form. [*Id*].

6. Defendants then made these issues the linchpin of their Motion for Partial Summary Judgment, suggesting, based on Mr. Hagerman's deposition testimony that,

> Once Rock & Rail adds water to cement within the concrete batch plant, it has irreversibly started the process of making concrete. (*Id*.at 176:3-178:11.) Rock & Rail has described this process as a "chemical reaction" which will generate heat once all of the ingredients (including the aggregate, the water, and the dry cement) are first combined in the Facility's concrete batch plant. (*Id*.)

[ECF No. 80, p. 9].

7. This was Defendants selective recitation of what Mr. Hagerman said. It wasn't, however, all he knew, so Plaintiff filed an affidavit by Mr. Hagerman, [ECF No. 82-1] (the "**Hagerman Affidavit**"), to correct Defendants' mischaracterization of his testimony and to complete the picture that Defendants started. At most the Hagerman Affidavit merely clarified matters on which Mr. Hagerman had already testified in his deposition on December 11, 2019.

8. Defendants now complain that the Hagerman Affidavit included expert opinions, disclosed for the first time on February 28, 2020. The referenced opinions are not particularly technical, nor expert in nature. Indeed, most of the "opinions" cited by Defendants are merely factual descriptions of how the Facility works. (*See* Hagerman Affidavit, ¶¶9-13). These are not matters of expert testimony.

9. The bulk of what Defendants focus on as "expert testimony" is in paragraphs 14 and 15 of the Hagerman Affidavit. Mr. Hagerman refers to the fact that "[t]he concrete production process involves a series of chemical reactions," (Hagerman Affidavit, ¶14), but he makes no attempt to offer testimony on the specific nature or detail of the chemical reactions. Moreover, the

reference to ASTM C94 was only cited in Rock & Rail's Response to Plaintiff's Motion for Partial Summary Judgment, to describe each type of mix and where and how the mixing occurs. [*See* ECF No. 82, p. 5]. Mr. Hagerman's statements in paragraph 15 of his affidavit similarly merely discuss, in general, the fact that chemical reactions occur during the mixing processes, and that the mixing process is not completed until it is in the trucks.

10.     To the extent that Defendants believed the specific chemical issues relating to the creation of concrete were important in this case, they should have disclosed an expert on that issue prior to the expert disclosure deadline, or, at the latest, after they examined Mr. Hagerman on all of these issues in his deposition. Instead, they made a tactical decision to use Mr. Hagerman's testimony, and not to retain an expert.

11.     The Hagerman Affidavit was only offered to rebut Defendants' mischaracterizations of Mr. Hagerman's deposition testimony in the context of the summary judgment briefing. Defendants cannot reasonably expect to "open the door" by relying on Mr. Hagerman's deposition testimony, and then slam it shut in Mr. Hagerman's face when he attempts to explain that testimony. But, indeed, they are attempting to go further, and to use this as a backdoor effort to make a late disclosure of an expert.

12.     Even assuming the Hagerman Affidavit first raised an issue relating to undisclosed expert testimony, Defendants knew of that issue when it was submitted on February 28, 2020, [ECF No. 82], or *at the latest*, as of the date of the Court's April 2, 2020 Order, [ECF No. 87]. Instead of taking action and seeking amendment of the Scheduling Order at that time, Defendants proceeded to engage an expert and have that expert complete a report. They did not file the Motion

until over two months later. Defendants could have sought leave to make this disclosure months ago. They did not do so, and should not be permitted to do so now.

13. If the Court is inclined to allow this late disclosure, fairness dictates that Rock & Rail be allowed to make a proper expert disclosure on the same issue.[1] Rock & Rail did not disclose a complete expert report, and if it is not now allowed to disclose an expert its hands will be unfairly tied at trial. There won't be an expert report to define the scope of the expert's opinion, so Rock & Rail will either need to be given wide latitude at trial to introduce expert testimony, or it will be restricted unfairly. Defendants cannot disclose a doctorate level professor in engineering and materials science, and then prohibit Rock & Rail from responding in kind. If Defendants do not want to rely on Mr. Hagerman's testimony on these issues, and instead to proffer their own, late-disclosed expert, Rock & Rail should be entitled to formally disclose an expert on the same subject.

14. Additional expert disclosures and discovery regarding the same could result in a delay in the trial.[2]

## CONCLUSION

15. For the reasons stated above, Defendants' Motion should be denied. To the extent it is granted, Rock & Rail should be given a full opportunity to present an expert on the issues on which Defendants now intend to do so, and the Scheduling Order should be amended to allow the same, including providing for a continuance of the trial if necessary.

---

[1] Defendants have already acknowledged in their Motion that, at a minimum, Rock & Rail is entitled to depose Dr. Srubar.

[2] Rock & Rail also acknowledges the possibility that trial could be delayed if COVID-19 restrictions continue in effect.

1873893.3

Respectfully submitted this 19th day of June, 2020.

/s/ Bill E. Kyriagis
Bill E. Kyriagis
Brian J. Connolly
Andrew L.W. Peters
Otten, Johnson, Robinson, Neff & Ragonetti, P.C.
950 Seventeenth Street, Suite 1600
Denver, Colorado  80202
Telephone:  303 825 8400
bkyriagis@ottenjohnson.com
bconnolly@ottenjohnson.com
apeters@ottenjohnson.com
*Attorneys for Plaintiff, Rock & Rail LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2020, a true and correct copy of the foregoing **RESPONSE TO MOTION TO AMEND SCHEDULING ORDER TO PERMIT DEFENDANTS TO REBUT PLAINTIFF'S UNTIMELY EXPERT DISCLOSURE** was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Mark E. Lacis
James R. Silvestro
Ireland Stapleton Pryor and Pasco P.C.
717 17th Street, Suite 2800
Denver, CO  80202
mlacis@irelandstapleton.com
jsilverstro@irelandstapleton.com

*/s/ Kendra Gripp*
Kendra Gripp

1873893.3