IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02453-RBJ

ROCK & RAIL LLC, a Colorado limited liability company,

    Plaintiff,

v.

MOTHERLOVE HERBAL COMPANY, a Colorado corporation,
INDIANHEAD WEST HOMEOWNERS ASSOCIATION, INC., a Colorado nonprofit corporation,
ROCKIN S RANCH LLC, a Colorado limited liability company,
JOHN CUMMINGS, an individual,
DAVID KISKER, an individual,
GARY OPLINGER, an individual,
WOLFGANG DIRKS, an individual, and
JAMES PIRAINO, an individual,

    Defendants.

## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(H)(3)

Plaintiff Rock & Rail LLC ("**Rock & Rail**") submits its Motion to Dismiss, and in support thereof states as follows:

<u>Certificate of Conferral</u>: Though conferral prior to filing motions under Fed. R. Civ. P. 12 is not required under D.C.COLO.LCivR 7.1(b)(1), undersigned counsel conferred with counsel for the Defendants by phone and is authorized to state that Defendants oppose the relief requested herein.

### I.    INTRODUCTION

When this action began, the parties disputed whether, under the Interstate Commerce Commission Termination Act, 49 U.S.C. §10706 *et seq.*, Rock & Rail could operate its rail

2147336.8

transloading facility without a local land use approval. Last summer, Weld County rezoned that Facility into an industrial district that permits all of Rock & Rail's intended uses. Earlier this month, the Weld County District Court upheld the rezoning against Defendants' challenge. Thus, every use of the Property is now permitted by Weld County zoning and there is nothing left to preempt. This Court now lacks subject matter jurisdiction because all of the remaining claims are moot. Rock & Rail respectfully requests that the Court dismiss this action as moot, pursuant to Fed. R. Civ. P. 12(h)(3).

## II.   JURISDICTIONAL FACTS

1. Rock & Rail is a federally-chartered Class III railroad that leases a 133-acre Weld County "**Property**" on which it operates an aggregate transloading facility (the "**Facility**").

2. When the Facility was constructed, the Property was zoned A - Agricultural. Under that zoning, the Facility required a County Use by Special Review ("**USR**") permit. (Weld County Code ("**Code**") § 23-2-200.A). The County does not regulate rail facilities, however, and no approvals are required for track, and other rail buildings and operations as long as they are controlled by a railroad. (Deposition of Thomas Parko ["**Parko Dep.**"] 83:1-85:21, a copy of which is attached as **Exhibit 1**).

3. The County's board of county commissioners ("**BOCC**") approved the Facility's USR in August 2015, and as part of its approval imposed development standards regulating the Facility, as it does for every USR approval. (Parko Dep. 68:8-25; 37:16-41:9; Parko Dep. Exhibit 5 at 27-30, a copy of which is attached as **Exhibit 2** ).[1]

---

[1] The County and BOCC are also the sole authorities entitled to impose and enforce development standards, and the BOCC has never approved a USR that delegated enforcement authority to a neighboring landowner. (Parko Dep. 55: 17-56:3.) (Parko Dep. 54:8-19.)

4. Relying on the then-valid permit, Rock & Rail's parent company, Martin Marietta Materials, Inc. ("**Martin Marietta**") constructed the Facility. The state court of appeals later invalidated the USR in an action (the "**First Appeal**")[2] that concluded with Martin Marietta's decision to withdraw the USR application and transfer the Facility to Rock & Rail, which it had acquired in November 2015, after the USR was issued. (Phears Dep. 36:23-37:12, a copy of which is attached as **Exhibit 3**).

5. In 2018, Rock & Rail initiated this action seeking a declaration that, as the Court put it, "[Rock & Rail] can operate its facility without a valid Weld County USR permit, even if its operations contravene the Weld County Land Use Code." (ECF No. 56 at 12.)

6. Defendants counterclaimed, seeking in their first claim the converse declaration that "Rock & Rail's non-rail Industrial Improvements, including the industrial concrete manufacturing plant, are not exempt from state and local law and are in fact illegal under the Weld County Land Use Code and applicable zoning." (ECF No. 16, ¶ A.) Their Fourth Claim sought another declaration that "Rock & Rail's operation of the Industrial Improvements is subject to the Developmental Standards that were voluntarily agreed to by [Martin Marietta.]" (*Id.* at ¶ D.)

7. The Court dismissed Defendants' second and third counterclaims, (ECF No. 56), so the only remaining claims are the competing declarations regarding preemption, and Defendants' development-standards claim.

---

[2] The BOCC issued a revised USR approval during the pendency of the First Appeal (Parko Deposition Exhibit 14, a copy of which is attached as **Exhibit 4** but none of the development standards changed.

8. While this matter was pending, Rock & Rail and the Property's owner filed an application with the County to rezone from A–Agricultural to I-3–Heavy Industrial. (ECF No. 89 at 1-2.)

9. In notifying the Court of its proposed rezoning, Rock & Rail explained, "Approval of the Application would bring all existing improvements on the property into conformance with updated County zoning requirements, as well as provide for construction of the asphalt plant previously authorized by the USR." (*Id.* at 2.)

10. In July 2020, the BOCC unanimously approved the Application and rezoned the Property to the I-3 district. (ECF 100.)

11. Defendants appealed the rezoning pursuant to Colo. R. Civ. P. 106(a)(4).

12. On June 2, 2021, the Weld County District Court (in an opinion attached hereto as **Exhibit 5** (the "**State Court Opinion**")) affirmed the rezoning, noting that "the [BOCC]'s decision to rezone the property at issue here is likely to moot some or all the issues raised in [the parties' federal action]." (State Court Opinion at 3.)

13. Rock & Rail has since received a conditional approval[3] of the Facility's site plan, a copy of which is attached hereto as **Exhibit 6**, and no further county land use approvals are required to operate or expand the Facility.

---

[3] The approval conditions concern minor matters that have already been addressed, or will have been addressed by the time this motion is fully briefed.

2147336.8

### III.     ARGUMENT

**A.     <u>Mootness is Jurisdictional and Can Be Raised at Any Time</u>**

Federal courts presume that a cause of action lies outside their limited jurisdiction, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (quoting *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Because parties cannot waive subject-matter jurisdiction, they too may challenge jurisdiction at any time before final judgment. *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017). The proponent of a claim bears the burden to establish that the claims are not moot. *Wilderness Watch v. Ferebee*, 445 F. Supp. 3d 1313, 1320 (D. Colo. 2020).

Federal courts lack subject matter jurisdiction when a case is or becomes moot. *Honig v. Doe*, 484 U.S. 305, 317 (1988); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). Mootness recognizes that courts resolve real controversies based on real facts, not hypotheticals. When a party "winds up with all the relief the federal court could have given him, . . . the suit has become moot and beyond the power of the federal courts to adjudicate." *Wyoming v. U.S. Dep't of Interior*, 587 F.3d 1245, 1250 (10th Cir. 2009) (quotation and citation omitted). This holds true even if the parties would prefer that the court "render an opinion to satisfy their demand for vindication or curiosity about who's in the right and who's in the wrong." "[The Court's] job is to decide cases that matter in the real world, not those that don't," *id*. at 1250, and the critical question is therefore "whether granting a present determination of the issues offered will have some effect in the real world." *Brown*, 822 F.3d at 1165-66 (quotation

omitted). If it wouldn't, the court no longer has a role in the controversy, and it must be dismissed. *See Rio Grande Silvery Minnow*, 601 F.3d at 1109; Fed. R. Civ. P. 12(h)(3).

With respect to declaratory relief in particular, the request becomes moot when it fails to "seek[ ] more than a retrospective opinion that [the plaintiff] was wrongly harmed by the defendant," *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011), and thus does not "settl[e] . . . some dispute which affects the behavior of the defendant toward the plaintiff," *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quotation omitted).

**B.       The Rezoning Has Mooted All of the Claims Pled in this Action**

Nearly three years after this action began, three claims remain: the parties' mirror-image requests for a declaration that ICCTA does or doesn't preempt Weld County's land use regulations, and Defendants' further claim that Rock & Rail is still bound to the development standards the County imposed in connection with the invalidated, and superseded, USR approval. Because the County has rezoned the Property, and all of Rock & Rail's uses are now permitted by right under the new heavy industrial zoning and approved site plan, resolving the remaining claims will have no real-world effect. Defendants' development standards claim is likewise moot because the Property's new zoning and approved site plan—not the invalidated USR approval that imposed the development standards—now provides the operative authority to run the Facility.

**1.       The Parties' Claims for Declaratory Relief Regarding the Applicable Law Are Moot**

The rezoning and site plan approval have mooted the parties' dispute. This action emerged from the aftermath of protracted state court litigation in which the Defendants (there, plaintiffs) were successful in their effort to overturn the USR approval, but then refused to accept their sole available remedy of remand to the BOCC. *See Wolf Creek Ski Corp. v. Bd. of Cty. Comm'rs of*

6

*Mineral Cty.*, 170 P.3d 821, 831 (Colo. App. 2007) (limiting remedy to remand). Instead, they appealed the district court's non-final remand order, contending that the court should have directed Martin Marietta to demolish the Facility. Faced with the prospect of endless litigation, Martin Marietta withdrew its USR application, the state court dismissed the action as moot, and Rock & Rail filed this case to establish federal preemption. Its preemption claim sought a declaration that ICCTA preempted local land use regulations and that the Facility could operate even though it was not authorized to do so under local land use law. (ECF No. 1 at 12.) Defendants' preemption counterclaim likewise sought a declaration that ICCTA did *not* preempt contrary County land use regulations, as well as a declaration that County regulations in fact prohibited the Facility. (ECF No. 16 at 22-23.) Ultimately, the claims asked the court to decide whether the Facility could operate without County approval.

The rezoning and associated site plan permit all of the activities for which Rock & Rail sought federal preemption, and all that remains of the preemption claims is idle curiosity. Deciding them will have no "effect in the real world" where Rock & Rail can operate perfectly well without any federal protection. After all, Congress created ICCTA to "remove[] the ability of states to frustrate [the] policy of deregulating and reviving the railroad industry," *CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1583 (N.D. Ga. 1996). Far from frustrating rail policy, the County has recognized the Facility's important contributions and approved it. Resolving the preemption question thus will have no practical effect. The current zoning permits all of the existing uses and proposed uses of the Property, and the site plan specifically approves of them, leaving nothing for federal law to preempt. *See Qwest Commc'ns Corp. v. Maryland-Nat'l Capital Park & Planning Comm'n*, RWT 07CV2199, 2010 WL 1980153, at *7 (D. Md. May

13, 2010) (explaining that Federal Telecommunication Act preemption exists to overcome barriers and concluding the issue was moot where). A decision now would not afford any prospective relief, and at best for Defendants would amount to "a retrospective opinion that [they were] wrongly harmed" by Rock & Rail. *Jordan*, 654 F.3d 1012, 1025 (10th Cir. 2011). That alone cannot maintain jurisdiction.

To be sure, Defendants doubtless believe they will one day prevail in their state court action and will return the Facility to its former regulatory no-man's-land, but their conviction offers no reason to decide the preemption question *now*. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (explaining "[a]llegations of possible future injury are not sufficient" to confer standing and that the injury must be "certainly impending"). Defendants' only argument against mootness amounts to a hypothetical, "What if . . . ?" What if the court of appeals reverses the State Court Opinion? And if so, what if, on remand, the County does not again approve the rezoning? What if the County one day adopts a policy that Rock & Rail refuses to accept? Absent some real-world consequence, however, courts need not, "render an opinion to satisfy their demand for vindication or curiosity about who's in the right and who's in the wrong." *Wyoming,* 587 F.3d at 1250.

Rock & Rail has not waived ICCTA preemption under every conceivable set of facts that might someday exist, but there is today no dispute that requires determination of the ICCTA issues raised by either side. Dismissal without prejudice is appropriate, and the parties can litigate preemption if and when it becomes a live issue.

## 2. The Rezoning Also Mooted Defendants' Development Standards Claim

Defendants' fourth claim demands that Rock & Rail comply with the development standards the County imposed to govern its USR approval. Such standards are often included with

8

USR approvals. At the time, Rock & Rail's predecessor could only engage in its proposed uses because it had the USR, and the USR imposed conditions and limitations on Rock & Rail's ability to engage in those uses.

Although the standards no longer exist (they disappeared with the USR's invalidation), and the Defendants lack standing to enforce them (the County wields that authority and doesn't delegate it),[4] the rezoning and site plan approval have, in any event, mooted Defendants' claim. Because Rock & Rail sought the rezoning to bring the Facility into conformity with County land use regulations, and the rezoning and site plan authorize the Facility without any USR approval or associated conditions, those approvals definitively wiped the regulatory slate clean. The new site plan sets the applicable standards.

Even if Defendants were the proper parties to enforce the prior development standards, their claim is moot because there is nothing left to enforce. *See Rio Grande Silvery Minnow*, 601 F.3d at 1111 (concluding challenges based on two earlier approvals were moot when a subsequent approval "established a new regulatory framework," superseded the earlier approvals, and those approvals no longer existed). At most, the Court could retrospectively conclude those standards applied at some prior point. But today, the Property's I-3 heavy industrial zoning and the conditions imposed via the site plan comprise the complete County regulatory framework for the use. That new framework supersedes the USR and its associated development standards and therefore moots Defendants' claim. *See Hayes v. Osage Minerals Council*, 699 Fed. Appx. 799,

---

[4] The County is not a party to this action, the development standards had already been invalidated along with the USR Approval when Defendants filed their counterclaims, and even if those standards survived, Defendants have not identified any authority under which they can compel Rock & Rail's compliance.

804 (10th Cir. 2017) (unpublished) (finding the challenged permit approvals were "no longer operative" and therefore concluding the challenge itself was moot).

The Court can at most afford retrospective relief to satisfy Defendants' curiosity or demand for vindication. The conclusion that the development standards applied for even a moment, however, cannot support any meaningful relief, and Defendants have not requested such relief. A decision on Defendants' fourth claim will have no real-world effect. It too should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Rock & Rail respectfully requests that the Court dismiss Rock & Rail's first and only claim for relief, as well as Defendants' first and fourth counterclaims, as moot.

Respectfully submitted this 16th day of July, 2021.

/s/ Andrew L.W. Peters
Bill E. Kyriagis
Brian J. Connolly
Andrew L.W. Peters
Otten, Johnson, Robinson, Neff & Ragonetti, P.C.
950 Seventeenth Street, Suite 1600
Denver, Colorado  80202
Telephone:  303 825 8400
bkyriagis@ottenjohnson.com
bconnolly@ottenjohnson.com
apeters@ottenjohnson.com
*Attorneys for Plaintiff, Rock & Rail LLC*

10

2147336.8

# CERTIFICATE OF SERVICE

      I hereby certify that on this 16th day of July, 2021, a true and correct copy of the foregoing **MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(H)(3)** was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Mark E. Lacis
James R. Silvestro
Ireland Stapleton Pryor and Pasco P.C.
717 17th Street, Suite 2800
Denver, CO  80202
mlacis@irelandstapleton.com
jsilverstro@irelandstapleton.com

          */s/ Monaé Farris*
          Monaé Farris

11

2147336.8